385 So.2d 439 (1980)
Dennis ESTA
v.
DOVER CORPORATION et al.
No. 13319.
Court of Appeal of Louisiana, First Circuit.
May 5, 1980.
Rehearing Denied July 7, 1980.
*441 Allen J. Borne, Franklin, for plaintiff.
John Nickerson Chappuis, Lafayette, for intervenor Continental Cas. Co. (Transp. Ins. Co.), defendant.
J. Walter Ward, Jr., New Orleans, for third party petitioners Joseph E. Hoy and The Continental Ins. Co., defendant.
Robert E. Kerrigan, Jr., New Orleans, for Continental Cas. Co., original defendant, third party defendant and intervenor and for Hoy's Pontiac-Buick-Olds, Inc. and Joseph E. Hoy, original defendant and third party plaintiffs.
L. Lane Roy, Lafayette, for Bayou Tractor, Inc. & John Deere Ins. Co., defendants.
James R. McClelland, Franklin, for Hoy's Pontiac-Buick-Olds, Inc., defendant and third party plaintiff.
Before COVINGTON, LOTTINGER and COLE, JJ.
COVINGTON, Judge.
Dennis Esta instituted this action against a number of defendants for damages arising out of an accident in which he was seriously injured when a vehicle hydraulic lift fell on him while he was under the lift working on his automobile. After trial by jury, a verdict was returned with the jury responding to special interrogatories.[1] The *442 trial judge signed a judgment in accordance with the verdict. Plaintiff has appealed. We affirm.
This suit arises from an accident which happened on November 16, 1976, while the plaintiff was employed as an automobile tire salesman for Hoy's Pontiac-Buick-Olds, Incorporated, an automobile dealership located in Franklin, St. Mary Parish, Louisiana. On the date of the accident, the plaintiff closed the tire department shortly before his usual quitting time to work on his personal automobile. He drove his automobile onto the vehicle hydraulic lift which was located in the rear of the place of business. With the automobile on the lift, the plaintiff activated the air valve near the lift to raise the automobile. When the car reached the lift's maximum height, the plaintiff placed a heavy steel pipe beneath the lift as a safety measure and went to get some tools to work on his car. He spent a brief period of time away from the lift in obtaining the tools, and then returned to work on his car. As he commenced his work, the lift and car fell, pinning him underneath the car and causing him serious injuries resulting in paralysis below the waist.
The plaintiff sued the alleged owner of the building and the hydraulic lift (as an appurtenant of the building), Joseph E. Hoy; the alleged employer and lessee of the building and lift, Hoy's Pontiac-Buick-Olds, Incorporated (Hoy's Pontiac); and the alleged manufacturers and sellers of the lift, Dover Corporation, Rotary Lift Company and Ernest Holmes Company. The alleged insurer of the manufacturers-sellers, Liberty Mutual Insurance Company, and the alleged insurer of Hoy and of Hoy's Pontiac, Continental Insurance Company, were joined in the suit as defendants.
More than one year after the accident, the plaintiff sued Bayou Tractor Company and John Deere Insurance Company, its insurer, alleging that Bayou Tractor was responsible for the accident because of repair work it had improperly done on the lift. They filed a plea of prescription which is re-urged here.
Before trial, the plaintiff settled his claims against Dover Corporation, Rotary Lift Company, Ernest Holmes Company, Inc., Hoy's Pontiac, Joseph E. Hoy, Liberty Mutual Insurance Company and Continental Insurance Company. The claims against all defendants, except Bayou Tractor and its insurer, were thus settled and the suit was partially dismissed.
The suit went to trial against Bayou Tractor and John Deere Insurance before a jury, with the jury being asked to respond to interrogatories, including questions concerning the negligence of the parties with whom the plaintiff had settled. The specific answers by the jury stated that Esta was not in the course and scope of his employment *443 at the time of the accident and was not guilty of negligence or contributory negligence which was a cause of the accident, and that he had not assumed the risk; that Hoy's Pontiac, through its employees Joseph E. Hoy, Johnny Martin and Tom Boudreaux, was negligent; and that Joseph E. Hoy, as an employee of Hoy's Pontiac, was negligent. The jury found that Hoy's Pontiac had custody of the lift, which they found to have created an unreasonable risk of harm to others, including Dennis Esta. Further, the jury responded that Rivers Simoneaux, an employee of Bayou Tractor, and defendant Bayou Tractor were not negligent. An award of $800,000.00 was made by the jury, but only against parties who had already been released from Esta's claims in the settlement.
In post-trial argument, the plaintiff contended that John Deere Insurance Company provided some insurance coverage to the parties found liable by the jury, but the trial judge ruled that, based on the jury's verdict and on the specific answers to interrogatories, the plaintiff had no collectible judgment against any party remaining in the law suit. The judge found that Esta had chosen to settle with the parties who were eventually found to have caused his injuries, and that there was no coverage for those parties under the John Deere policy.
The principal issues before us concern:
(1) Whether Bayou Tractor, through its employees, particularly Rivers Simoneaux and Joseph E. Hoy, was negligent in repairing the hydraulic lift, which negligence was a cause-in-fact of the accident;
(2) Whether the trial judge committed error in failing to give certain requested jury charges pertaining to the "borrowed servant" doctrine, the doctrine of strict liability of the owner of the building in which the lift was situated, causation of the accident in duty-risk terms and the effect of remedial measures taken after the accident;
(3) Whether the trial judge erred in failing to find coverage under the John Deere Insurance Company insurance policy; and
(4) Whether the trial judge erred in denying the plaintiff's request to call Joseph E. Hoy under cross-examination.
Under our Constitution of 1974, Article 5, § 10(B), and the case of Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), this court is mandated to give a thorough review of the factual findings of the jury. We must find from the record that there is a reasonable factual basis for the findings of the jury and trial court, and that the record establishes that the findings are not clearly wrong (manifestly erroneous) in order for us to affirm the judgment. B & L Associates, Inc. v. Crump, 369 So.2d 1094 (La.App. 1 Cir. 1979).
1. Was Bayou Tractor negligent in such a way as to have been a cause in fact of the accident?
We have carefully examined the record and we see no manifest error in the jury's finding that Bayou Tractor was not negligent. The only persons connected with Bayou Tractor who are said by plaintiff to have been negligent were Joseph E. Hoy and Rivers Simoneaux. Mr. Simoneaux was a mechanic and shop foreman at Bayou Tractor Company. He is the employee who, at the direction of Joseph Hoy, repacked and repaired the lift in question. He testified that he had performed this repacking work some time before the accident; that he had done the repacking properly; and that after the work, he tested it and it worked properly without leaking. The cylinder and ram were not corroded and the lift operated satisfactorily when he tested it. The three expert witnesses called by the plaintiff on the question of the malfunction of the lift did not testify that the job that Simoneaux did caused the accident. Dr. Sabbaghian and Mr. Liebkemann were of the opinion that the packing was not a cause of the accident. Mr. Myers and Dr. Sabbaghian indicated that the surface beneath the safety pipe was a primary cause of the accident.
*444 At the outset, it should be understood that Joseph E. Hoy appears in the case in three capacities: as an individual, as a representative of Hoy's Pontiac, and as a representative of Bayou Tractor. Mr. Hoy was a major stockholder and officer in both corporations, and owner-lessor of the premises.
Esta settled all of his claims with Joseph E. Hoy, individually and as representative of Hoy's Pontiac, as well as with the entity, Hoy's Pontiac. He only reserved his rights against the entity Bayou Tractor (and presumably any acts of Hoy as a representative of Bayou Tractor) and its insurer, John Deere Insurance Company.
Joseph Hoy testified about the accident as follows:
"Q. What, if anything, can you say that if it were that the pipe were placed by Mr. Esta under the rack; then he leaves for a period of 15 minutes. What, if anything, can you say about any warnings that he would have prior to the fall of the lift?
A. The way it was, he didn't have any warning, because the air was out and I believe that heand not knowing how to operate the thing, let the air out of it and put off the pressure on the pipe. Now, if the pipe would have been on the bolt, that never would have happened or if he'd have had the pipe and thrown it away, it wouldn't have happened."
Mr. Hoy testified that he personally owned the building in which Hoy's Pontiac operated its business; that he leased the building to Hoy's Pontiac; that Hoy's Pontiac owned the hydraulic lift.
He testified further that some months before the accident he had had Bayou Tractor (Rivers Simoneaux) change the packing, because he (Hoy) had noticed some oil seepage. The lift was in working condition, but gave indication of being low on oil; only hydraulic oil was used in the lift. The "repair work" that Simoneaux did was just to replace the packing; he did not give it a general overhaul.
Mr. Hoy further testified that no employee has permission to work on his personal car during working hours and that he did not give Mr. Esta permission to use the lift. He conceded that there were no warning signs, that he had no formal safety programs, and that he had not instructed the plaintiff in its use. He denied that the shop foreman, Thomas Boudreaux, had authority to grant permission to Esta to use the lift.
One of plaintiff's experts, Fred Liebkemann, engineer, in private practice as a consultant, who testified as an expert in the field of mechanical engineering, and who saw the lift three weeks after the accident, stated: (R 572)
"For it (the lift) to fall all the way down most of the fluid would have to be out of the ram and a significant amount of the air pressure released out of the system."
He said that either a leak in the union or a leak in the packing, or both, could be a cause of this condition. He indicated that as long as there is an adequate amount of oil in the ram, the lift can not come down fast. Mr. Liebkemann observed nothing mechanically wrong with the lift when he viewed it three weeks after the accident. He said packing would usually last for a number of years; that as the packing wears, you might have to tighten the flange. He also indicated improper placement of the safety-pipe could cause the lift to fall. There was an indication that use of the wrong-type of hydraulic fluid might cause some problems, but he did not know what brand or weight of oil was actually used in the lift. Mr. Liebkemann did not examine the packing that was actually used in the lift. He was primarily concerned with the design of the lift and had initially tested it for the manufacturer's insurer.
On cross-examination (R 588), Mr. Liebkemann testified:
"Q.... Mr. Liebkemann, it was not your opinion, sir, in the report that you rendered that the packing was the cause of the accident, was it?
A. No."
*445 He also expressed the opinion that the pipe in use at the time of the accident was an adequate safety device if properly used.
Dr. Mehdy Sabbaghian, a professor at LSU in the mechanical engineering department, was accepted as an expert in that field. He examined the lift on two occasions, in April, 1977 and July 1, 1977. He did not pay special attention to the packing. He observed the broken concrete and oil saturation of the soil beneath the lift. The pipe could support over 6000 pounds, so it was an adequate safety device, if properly placed and used. He opined that the pipe may have broken through the concrete where it was weakened from leaking oil. He also thought there had been leakage at the union. He said the cylinder and ram were not noticeably corroded. He stated that if only air (without oil) was in the system, the lift could fall rapidly.
Harold Myers, a consulting mechanical engineer who does mostly failure analysis type work, testified that on December 20, 1976, after the accident, he examined the lift. Mr. Myers indicated that the lift would fall slowly if there was a slow leak in the packing (which is not intended to be liquid tight or air tight). The union was not leaking when he examined it. He tested the lift, and there was no leak. He indicated that it was not the pipe that failed but the surface beneath the pipe (apparently the concrete). Mr. Myers answered that if the lift were raised without difficulty by using the air valve, it indicated there were no significant leaks in the system at the time of the accident. He also saw no corrosion.
Arthur J. Sinitiere, Jr., an employee of Hoy's Pontiac as a general mechanic, testified to Rivers Simoneaux, an employee of Bayou Tractor, repairing the lift when repairs were needed. He only remembers one time that the repairs were made. He did not actually see the accident. He and Mr. Bordelon helped get Mr. Esta from under the lift after Mr. Cancienne had raised the lift by operating the air valve. He (Sinitiere) had used the lift many times. Hoy's Pontiac had some problems with the lift, in that "... sometime it didn't operate right and sometime it did. The only thing you just have to know how to use it." He sometimes noticed oil around the base of the lift. It was "common knowledge" of some leaking oil. They always put the pipe underneath the lift. The only time he saw the lift come down was when the pipe was not put in place. There were no warning signs, and Hoy's Pontiac had no safety program.
Hermy P. Belanger had been a part time employee of Hoy's Pontiac for about two years at the time of the accidentgreased cars, changed the oil, washed cars, etc. The pipe fell a couple of times with him, but the rack did not come down. He saw Simoneaux of Bayou Tractor work on the lift one time, changing the packing. There were no warning signs. Belanger had worked at a service station where they had a similar grease rack, so he knew how to use it. He recalled some instances when the rack came down slowlywhen the pipe was not under it. There was no leaking at the union. He did observe a broken area in the concrete and he had seen some oil leakage.
Emmet John Martin, the general manager of Hoy's Pontiac and son-in-law of Joseph E. Hoy, testified to Rivers Simoneaux repairing the lift. He knew of some oil leaks, which were fixed. There were no instructions on the grease rack, and no safety programs at Hoy's Pontiac. Martin was out of town during the day and did not learn until later of the plaintiff's accident. He did not know Esta was going to use the lift that day. The employees were told not to work on their personal cars during work hours. He had used the lift and it worked all right. Mr. Esta had no mechanic duties; his job was in the tire department.
Thomas E. Boudreaux, the shop foreman at Hoy's Pontiac, was in the parts department when the accident happened. He had given Esta permission to use the lift to work on Esta's car. He did not instruct the plaintiff in how to use the lift, and there were no warning signs or safety programs.
*446 Mr. Boudreaux, as shop foreman, used the lift to check cars to see what had to be done to them, so he had used it frequently. He had had no problems. There were some oil leaks. After the accident, the lift was down and the pipe had gone through the concrete.
Dennis Esta, the plaintiff, testified that Tom Boudreaux gave him permission to use the hydraulic lift. Neither Boudreaux nor anyone else at Hoy's Pontiac gave him any instructions on its use, although he had never used the lift. He raised the lift and placed the safety pipe under it. There were no rack hands around to operate the lift. He stated that he was checking the differential oil when the lift and the car fell without warning "like a brick." He was pinned beneath the lift in a sitting position, severely injuring him. He was rescued by two of the employees of Hoy's Pontiac and taken to the hospital.
Mr. Esta had worked in the tire department of Hoy's Pontiac for only a short time, and had received no warnings about the dangers of the lift, and no instructions on its use. Although there may have been a company policy against working on personal cars and use of the lift, Mr. Esta was given specific permission by the shop foreman to use the lift to work on his own car. There is no evidence that Mr. Esta was contributorily negligent or assumed the risk of injury to himself. The jury correctly found that the accident was not due to the fault of Mr. Esta.
Further, there is no evidence to show that Mr. Hoy acted negligently on behalf of Bayou Tractor. The jury found that his negligence was committed as an employee or agent of Hoy's Pontiac, not Bayou Tractor. The record supports this finding. Mr. Hoy was not a mechanic and performed no work himself on the lift in connection with the repacking job. There is no evidence that Mr. Hoy failed to perform adequately his duty to direct the repacking work of Mr. Simoneaux for Bayou Tractor. He did, however, fail in his duty as an executive officer of Hoy's Pontiac to properly warn his employee, Mr. Esta, of the dangers of using such a lift and to properly instruct, or have instructed, his employee on its proper use.
From a fair appraisal of the testimony, one can only conclude that the accident was primarily caused by Hoy's Pontiac's failure to warn users of the lift of the dangers connected with its use, and failure to properly instruct users in its use. Hoy's Pontiac took no safety precautions. The evidence shows no defect in the lift's design or manufacture, or that it was negligently repaired by Bayou Tractor. The accident was not caused by malfunction, but by improper use due to failure of Hoy's Pontiac to properly instruct on its use, or to prevent its use by persons not properly instructed on how to use it safely. The record reveals that there was a reasonable factual basis for the finding that Bayou Tractor was not negligent and the record establishes that the findings of the jury were not clearly wrong.
2. Did the trial judge err in refusing to give certain requested jury charges?
a. Requested charge on "borrowed servant" doctrine.
Plaintiff argues that the trial judge committed error in denying plaintiff's requested charge on the issue of "borrowed servant" as set out in plaintiff's requested jury charge. The record reveals that the trial judge did instruct the jury on this issue in his general charge. He is not required to give a charge unless the facts support the giving of the charge. Beck v. Lovell, M.D., 361 So.2d 245 (La.App. 1 Cir. 1978), writ denied, 362 So.2d 802 (La.1978). In the instant case, it was not a question of Hoy's Pontiac borrowing Simoneaux. All of the evidence on this question leads only to the conclusion that Simoneaux was, and at all pertinent times remained, the employee of Bayou Tractor. Thus, the case of LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978), cited by appellant, is inapplicable. In addition, the requested charge does not fully and accurately state the law regarding the "borrowed servant" *447 doctrine.[2] See Haynes v. Baton Rouge General Hospital, 298 So.2d 149 (La.App. 1 Cir. 1974), writ denied, 302 So.2d 33 (La. 1974).
Since the jury found Simoneaux not negligent, it was not necessary for it to decide the question of whether Simoneaux was acting as an employee of Bayou Tractor or a "borrowed servant" of Hoy's Pontiac. Consequently, the court's instruction regarding the "borrowed servant" doctrine had no significance as far as the activities of Simoneaux were concerned. The jury's answers to the interrogatories clearly show that it found Simoneaux to be an employee of Bayou Tractor. There is no evidence which can be construed as showing that he was a "borrowed servant" of Hoy's Pontiac. As to Joseph E. Hoy, an executive officer of both Bayou Tractor and Hoy's Pontiac, the jury found that he was representing Hoy's Pontiac when he acted negligently. The record amply supports this finding.
b. Requested charge on causation in duty-risk terms.
At the trial of this case, the plaintiff requested certain jury charges on the issue of causation in terms of the duty-risk tort analysis theory. The substance of these special charges was that the wrongful conduct need not be the "sole cause" of the harm; the harm could be caused by the combined fault of the defendants. The general charges of the trial judge adequately covered the substance of the plaintiff's requested special charges. We find the judge's instructions fully meet the correct legal standards for determining tort liability in this state, some of which are mentioned in LeJeune v. Allstate Insurance Co., supra.
The LeJeune case was cited in Brown v. Louisiana Department of Highways, 373 So.2d 605, 608 (La.App. 3 Cir. 1979), as follows:
"In order to establish liability on the part of the Department, plaintiffs must not only show that the defendant's conduct was tortious, but also that the acts complained of were a cause-in-fact of their injuries. To be a cause-in-fact of plaintiff's harm, the negligent conduct must have been a substantial factor in causing the accident. Such conduct need not be the sole cause, but it has to be a necessary ingredient of the resulting injuries and direct relationship between the two is required."
c. Requested charge on doctrine of strict liability.
The evidence in the record of this lawsuit clearly shows that the lessee, Hoy's Pontiac, not the lessor, Joseph E. Hoy, owned and had custody of the hydraulic lift. There was no evidence upon which a charge of "strict liability" could be based. Beck v. Lovell, supra; Haynes v. Baton Rouge General Hospital, supra. Articles 2317 and 2322 are inapplicable to the present factual situation. We hold that it was not error for the trial judge to refuse to give the requested charge on the doctrine of "strict liability." The case of Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1979), is factually distinguishable from the instant case and is inapposite.
The only testimony concerning the ownership and custody of the hydraulic lift shows that the lift was purchased by Hoy's Pontiac as used equipment several years before the accident, that it was always used in the business of Hoy's Pontiac and that it was always in the custody of Hoy's Pontiac on the leased premises. The uncontradicted evidence shows that the lift was not owned by Joseph E. Hoy, individually. Mr. Hoy, as an individual, had no custody or control over the lift. The only connection which *448 he, individually, had with the lift was that he owned the land and building where the accident happened, and that both land and building were leased by written lease from Joseph E. Hoy to Hoy's Pontiac-Buick-Olds, Incorporated, which lease had an indemnification clause in favor of the lessor.
d. Requested charge on the effect of remedial measures taken after the accident.
Although the plaintiff raises the question of the failure of the trial judge to instruct the jury on the completion of remedial measures on the hydraulic lift, as requested in one of plaintiff's requested special charges, the record reflects that this was not a prejudicial error. The so-called remedial measure concerning which the plaintiff sought to offer evidence was that employees of Bayou Tractor welded a gravity operated safety leg on the lift following the accident. We find that such evidence had no relevance to the question of a maintenance contract between Hoy's Pontiac and Bayou Tractor, especially when all of the evidence in the record shows that there was no such contract; such evidence had no relevance to the repacking work which Bayou Tractor's employee, Rivers Simoneaux, did on the lift. See Boudoin v. Schwegmann Bros. Giant Supermarket, 371 So.2d 370 (La.App. 4 Cir. 1979).
In addition, a case cited by plaintiff in his brief on appeal, Wallner v. Kitchens of Sara Lee, Inc., 419 F.2d 1028, 1032, (U.S. C.A. 5 Cir. 1969), is factually distinguishable because in Wallner it was a question of who was responsible for the repair and routine maintenance of the particular equipment, while the question in the instant case was whether Bayou Tractor had negligently performed a particular repair job. To have allowed evidence of the post-accident change of the safety leg on the lift would have been to have allowed such evidence to show the negligence of Bayou Tractor. Post-accident changes are not admissible for such purposes. In the case of Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844 (La.App. 1 Cir. 1975), writ denied, 325 So.2d 279 (La.1976), it was stated that: "It is well settled that evidence of changes, repairs, or corrective measures taken subsequent to an accident, for the purpose of preventing a similar recurrence, is inadmissible to show negligence or establish an admission of fault." The Wallner case, relied upon by plaintiff, also recognized the rule that post-accident changes are not admissible to demonstrate the negligence of the defendant.
Considering the requested special charges as a whole, we find that the requested special charges were adequately covered by the general charges, and the failure to amplify by including the specific verbiage requested by plaintiff's counsel in each particular instance does not constitute reversible error. Haynes v. Baton Rouge General Hospital, supra.
3. Was there coverage under the John Deere Insurance Company policy so as to make the insurer liable to the plaintiff?
It is the plaintiff's contention that John Deere Insurance Company is liable to him under the insurance policy involved herein, as the insurer of Bayou Tractor, which negligently repaired the hydraulic lift, and as the insurer of Joseph E. Hoy, who is strictly liable to the plaintiff as well as being negligent as an employee of Hoy's Pontiac and also negligent as an employee of Bayou Tractor.
There is no merit in the plaintiff's attempt to hold the employer liable on the grounds that Joseph E. Hoy was negligent as an employee of Hoy's Pontiac and Bayou Tractor. Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960), holds that a settlement with the agent or employee releases not only the agent-employee, but releases the employer who is only vicariously or secondarily liable under the doctrine of respondeat superior, even though the plaintiff reserves his rights against the employer and his insurer in the compromise agreement. See also Caldwell v. Montgomery Ward & Company, Inc., 271 So.2d 363 (La.App. 2 Cir. 1972).
*449 However, as mentioned above, plaintiff asserts that even if John Deere Insurance is not liable as the insurer of Bayou Tractor, it is liable as the insurer of Joseph E. Hoy and/or of Hoy's Pontiac.
The record shows that the plaintiff settled with all defendants, including Joseph E. Hoy and Hoy's Pontiac, reserving only his rights against Bayou Tractor and John Deere Insurance.[3]
We find no language in the insurance policy that can be construed to cover Joseph E. Hoy acting on behalf of any entity other than Bayou Tractor, or to cover Joseph E. Hoy in his other individual activities, or to cover Hoy's Pontiac. The policy in the record does not include Joseph E. Hoy or Hoy's Pontiac as an "insured" as the plaintiff asserts. Bayou Tractor (a partnership which became a corporation) was the business insured by John Deere Insurance under this policy. The record does not support the plaintiff's claim that Mr. Hoy and Bayou Tractor exercised control and management over the hydraulic lift. Rather, the evidence shows that the lift was owned by Hoy's Pontiac, which had the sole control and management over it. The record shows that Mr. Esta settled with Hoy's Pontiac, as well as with Mr. Hoy. We regard his settlement with Joseph E. Hoy, which encompasses full settlement regardless of whatever nature, as an unequivocal compromise of all differences and release of all "liability whatsoever" between Mr. Hoy and Mr. Esta. There is no indication in the agreement that he was releasing Mr. Hoy only insofar as the latter was acting for Hoy's Pontiac. Plaintiff also released all representatives of Mr. Hoy and Hoy's Pontiac and their "indemnitors." See Manning v. Duncan, 353 So.2d 1353 (La.App. 1 Cir. 1977).
The basic question on the issue of insurance coverage is whether any employee of Bayou Tractor was negligent while acting in the course and scope of his employment with Bayou Tractor at the time of the Esta accident. The jury's answers to the interrogatories on this question were in the negative. Rivers Simoneaux was found by the jury to be not negligent, and the evidence in the record supports this finding. The only other person connected with Bayou Tractor who could be said to be involved was Joseph E. Hoy. The jury's response indicates that he was negligent, but only in his activities connected with Hoy's Pontiac.
Our study of the pertinent insurance policy convinces us that coverage is afforded Hoy, other employees, and other executive officers of Bayou Tractor only while they are acting in behalf of or in the course of their employment for Bayou Tractor. The provisions of the policy make it clear that the actions of Mr. Hoy as an executive officer are only covered by the policy if such actions are for Bayou Tractor. The policy covers the "persons insured" only in the event they are acting in furtherance of the business of the main named insured, Bayou Tractor. The jury, as discussed above, found that Mr. Hoy was not so acting at the time of the accident.
Therefore, the plaintiff has no claim against John Deere Insurance Company under the terms and provisions of the insurance policy involved herein. Meche v. Travelers Insurance Company, 222 So.2d 339 (La.App. 1 Cir. 1969), writ refused, 254 La. 760, 226 So.2d 522 (1969).
4. Was error committed by the trial judge in denying the plaintiff's request to call Joseph E. Hoy under cross-examination?
The record reflects that the plaintiff had already called Rivers Simoneaux as *450 representative of Bayou Tractor and cross-examined Mr. Simoneaux as he desired, when he then sought to call Mr. Hoy as representative of Bayou Tractor under the rule of LSA-C.C.P. art. 1634. This procedural rule permits a party to call an adverse party (or his representative) under cross-examination. It also gives the court discretion to allow further cross-examination if it "deems such action to be in the interest of justice." The judge did not allow counsel's request. We believe that under the circumstances of this case Mr. Hoy was a representative of an adverse party, Bayou Tractor, and as such, the plaintiff had a right to call him under the rule. Powell v. Parkview Estate Nursing Home, Inc., 240 So.2d 53 (La.App. 2 Cir. 1970).
However, the trial court's ruling, if incorrect as we believe, was harmless error. It had no effect on the outcome of the trial and in no way prejudiced the plaintiff's case. The court's ruling did not deprive the plaintiff of his opportunity to cross examine and impeach Joseph E. Hoy, if he so desired. The record reveals that the plaintiff did use Hoy's deposition to question him about prior inconsistent statements. Mr. Hoy did not deny making the statements complained of in the deposition; he admitted making them. Mr. Hoy simply testified that the statements in the deposition were untrue or incorrect. It was a question for the jury to decide which statements of Mr. Hoy it chose to believe, and whether or not his testimony was credible. There was no basis for putting the deposition itself in evidence.
The record also reflects that this particular individual had been a party to the action and had been voluntarily released from the suit by the plaintiff. Esta did call Mr. Hoy as his witness, but was allowed considerable latitude in his questioning on direct examination. The record does not indicate that counsel was prevented from asking the questions he wanted to ask or was in any way prejudiced by this procedure. He was allowed much leeway in leading this witness and in extracting answers from Mr. Hoy.
Further, the record reflects that the plaintiff was not deprived of his opportunity to cross examine Mr. Hoy. Mr. Hoy was called as a witness by defendants, and plaintiff's counsel exercised fully his right of cross examination. We find that under the facts and circumstances of this case, the trial judge did not commit prejudicial error in refusing to allow the plaintiff to call Mr. Hoy under the rule.
In view of the foregoing disposition of the case, we will forego any discussion of the plea of prescription made by the defendants, Bayou Tractor and John Deere Insurance.
Accordingly, for the reasons assigned, we affirm the judgment appealed at the appellant's costs.
AFFIRMED.
NOTES
[1] The pertinent answers to interrogatories by the jury follow:

Number 3: Was Joseph Hoy guilty of negligence which was a proximate cause of the accident and injuries to Dennis Esta?
Ans. Yes.
Number 4: If you answer No. 3 above "yes" then answer this question. At the time of his negligence which you have found was a proximate cause of the accident and injuries to Dennis Esta, was Joseph Hoy acting for himself, Hoy's Pontiac and/or Bayou Tractor Company?
Ans. Hoy's Pontiac.
Number 5: Was Rivers Simoneaux guilty of negligence which was a proximate cause of the accident and injuries to Dennis Esta?
Ans. No.
Number 8: Was Hoy's Pontiac-Buick-Olds, Inc. negligent which was a proximate cause of the accident and injuries to Dennis Esta?
Ans. Yes.
Number 9: If you answered No. 8 "yes", please indicate who acted on behalf of Hoy's Pontiac in performing the negligence which was a proximate cause of the accident of Dennis Esta.
Ans. Joseph Hoy, John Martin, Tom Boudreaux.
Number 10: Did Hoy's Pontiac have in its custody a thing which created an unreasonable risk of harm to others?
Ans. Yes.
The answers to other interrogatories indicated that Dennis Esta was not at fault for his own injury; that the manufacturer and seller of the lift, Dover Corporation and Rotary Lift Company were not negligent; and that Bayou Tractor was not negligent. The jury concluded that the sole proximate cause of the accident and injury to Esta was the negligence of Hoy's Pontiac through its employees, Hoy, Martin and Boudreaux and in keeping a lift which "created an unreasonable risk of harm" to Esta.
[2] Plaintiff's requested jury charge as to "borrowed servant" follows:

"If you find that Joseph E. Hoy, Rivers Simoneaux or any other employee, representative or agent of Bayou Tractor Company was a borrowed employee of Hoy's Pontiac-Buick-Olds, Inc., Bayou Tractor Company is still liable to Dennis Esta even for the negligent acts of Joseph E. Hoy, Rivers Simoneaux or any other employee, representative or agent committed as borrowed employees of Hoy's Pontiac-Buick-Olds, Inc. [LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.Sup.Ct.1978)]."
[3] (1) Judgment of dismissal of suit dated February 16, 1979, against Dover Corporation, Rotary Lift Company, Ernest Holmes Company and Liberty Mutual Insurance Company was based on a settlement and compromise, which was executed on February 15, 1979.

(2) Judgment of dismissal of suit dated April 11, 1979, against Joseph E. Hoy, the Continental Insurance Company, Hoy's Pontiac-Buick-Olds, Inc. and Continental Casualty Company was based on a settlement, reserving all rights against Bayou Tractor Company and John Deere Insurance Company, which was executed on April 11, 1979.